EQUITY ASSOCIATES, A NORTH CAROLINA GENERAL PARTNERSHIP, N. CARL MONROE, JERRY N. THOMAS, AND HAROLD GREENE v. THE SOCIETY FOR SAVINGS

No. 7618SC423

(Filed 20 October 1976)

**Process § 14— jurisdiction over foreign corporation — contract made and to be performed in N. C.**

A Connecticut corporation was subject to the jurisdiction of the courts of this State under G.S. 55-145(a)(1) in an action for breach of contract to provide permanent financing for a motel to be constructed in this State and for fraud and unfair and deceptive acts in relation to such contract where the contract was made in this State because plaintiff performed the final act necessary to make it a binding agreement by signing it in this State, and where the contract was substantially performed in this State because the motel was built here; furthermore, the Connecticut corporation had sufficient minimal contacts with this State so that subjecting it to the jurisdiction of the courts of this State did not violate due process since it voluntarily joined in a contract to be performed in this State.

APPEAL by defendant from order of *McConnell, Judge.* Order entered 2 April 1976 in Superior Court, GUILFORD County. Heard in the Court of Appeals 23 September 1976.

Defendant, The Society for Savings, is a foreign corporation organized under the laws of Connecticut. It appeals from

an order that it is subject to the *in personam* jurisdiction of the courts of North Carolina under G.S. 55-145(a)(1).

The facts pertaining to jurisdiction over the parties are not in dispute. Equity Associates (Equity) is a general partnership organized under the laws of North Carolina, and its general partners, N. Carl Monroe, Jerry N. Thomas and Harold Greene are residents of this State. In an agreement dated 14 March 1974, Equity entered into a contract with The Society for Savings (Savings), a Connecticut corporation which neither resides nor transacts business in North Carolina, and Connecticut General Mortgage and Realty Investments (Connecticut General), a trust organized in Massachusetts. This contract provided for financing of a motel to be built in Winston-Salem, and was executed by Connecticut General in Massachusetts, by Savings in Connecticut and, finally, by Equity in North Carolina. The contract provided that Connecticut General would make Equity a $1,800,000 construction loan evidenced by a promissory note, with which to build the motel. It further provided that upon completion of the motel and other requirements, Savings would buy the note from Connecticut General and extend the due date as a way to provide permanent financing for Equity. Equity built the motel and, so they allege, complied with all other contract requirements. On 30 September 1975 representatives of Connecticut General and Equity went to the offices of The Society for Savings in order to close the sale of the loan documents as provided in the 14 March 1974 agreement. Savings at that time refused to purchase these documents.

Equity filed suit on 17 November 1975 in Guilford Superior Court alleging causes of action against Savings for breach of contract, fraud, and unfair and deceptive acts and practices violating G.S. 75-1.1. Process was personally served on Savings at its offices in Connecticut. Thereafter, on 19 December 1975, Savings appeared by counsel and, pursuant to Rule 12(b)(2), Rules of Civil Procedure, filed a motion to dismiss for lack of jurisdiction. In affidavits supporting its motion, Savings affirmed that it had never resided, or been admitted to do business, in North Carolina. It further affirmed that it had no agent, place of business or property in North Carolina, and that it never solicited business in this State. It admitted that its employees had twice visited North Carolina on business stemming from this contract with Equity.

The motion to dismiss was denied. The trial court concluded that the 14 March 1974 contract was made and substantially performed in North Carolina, that the contract constituted a promise by Savings to Equity to create an interest in, protect, acquire, use, own, control and possess realty in North Carolina, and that there were sufficient contacts between Savings and North Carolina so that exercise of jurisdiction by the State comported with due process. Savings appeals.

*Brooks, Pierce, McLendon, Humphrey and Leonard, by Hubert Humphrey and Michael D. Meeker, for plaintiff appellees.*

*Smith, Moore, Smith, Schell and Hunter, by Bynum M. Hunter and David M. Moore II, for defendant appellant.*

ARNOLD, Judge.

Savings denies that G.S. 55-145(a)(1) subjects it to the jurisdiction of North Carolina's courts. We disagree. G.S. 55-145(a)(1) provides:

> "(a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
>
> (1) Out of any contract made in this State or to be performed in this State. . . . "

The contract between Savings and Equity was both made and substantially performed in North Carolina. It was made here because Equity performed the final act necessary to make it a binding agreement by signing it in Greensboro, North Carolina. *Goldman v. Parkland of Dallas, Inc.*, 277 N.C. 223, 176 S.E. 2d 784 (1970); *Munchak Corp. v. Caldwell*, 25 N.C. App. 652, 214 S.E. 2d 194 (1975). The contract was substantially performed here because the motel was built here. *Byham v. National Cibo House Corp.*, 265 N.C. 50, 143 S.E. 2d 225 (1965). Clearly, if G.S. 55-145(a)(1) is given its plain and ordinary meaning, it encompasses this cause of action.

Savings argues that *Atlantic Coast Line R. R. v. Hunt & Sons, Inc.*, 260 N.C. 717, 133 S.E. 2d 644 (1963), and cases following it, restrict the bounds of G.S. 55-145(a) so that it only

reaches those causes of action which arise in North Carolina. Equity argues that the more recent case of *Byham v. National Cibo House Corp., supra,* extends jurisdiction to the full statutory limits. We hold that, on our facts, *Byham* controls. Byham, a North Carolina resident, sued Cibo House, a Tennessee corporation, for rescission of a restaurant franchise contract made in Tennessee and to be performed in North Carolina. The cause of action was based on allegations of fraud in the inducement. Thus, the cause of action arose in Tennessee at the time the contract was completed. Cibo House moved to dismiss the action on grounds that North Carolina lacked jurisdiction. The trial court denied the motion, and our Supreme Court affirmed on appeal holding that since the franchise was to operate in North Carolina it was a contract to be substantially performed here. This was enough to comply with G.S. 55-145(a)(1).

We are aware of language in *Atlantic Coast Line R. R. v. Hunt & Sons, Inc., supra,* which says: "G.S. 55-145 pertains only to local actions. It has no application to any cause of action arising outside the State." *Id.* at 721. Similar language appears in *Marshville Rendering Corp. v. Gas Heat Eng'r Corp.,* 10 N.C. App. 39, 177 S.E. 2d 907 (1970), and *Dillon v. Numismatic Funding Corp.,* 29 N.C. App. 513, 225 S.E. 2d 137 (1976). These opinions are to be read in light of their facts. The broad statements, following *Hunt & Sons,* that no part of G.S. 55-145 provides jurisdiction over a cause of action arising outside North Carolina are *obiter dicta* and do not control the case at bar. *Hunt & Sons* and *Marshville Rendering Corp.* are both tort actions. G.S. 55-145(a)(4) says, "Every foreign corporation shall be subject to suit . . . on any cause of action arising . . . out of tortious conduct in this State. . . . " In *Hunt & Sons* the complaint alleged that the manufacturer of gas water heaters, a Michigan corporation, sold a heater to the plaintiff in Michigan without warning the plaintiff it was inherently dangerous, and that because of this negligence the heater exploded in Virginia. Clearly, the tort occurred outside North Carolina, and G.S. 55-145(a)(4) could not give jurisdiction to this state's courts. *Marshville Rendering Corp.* is remarkably similar. There a Nevada corporation sold a gas boiler to a North Carolina contractor. The sale was completed in Pennsylvania. There was an alleged defect in the boiler, and it exploded in North Carolina. Under our law, the cause of action for tort and breach of warranty arose at the time of sale in Pennsylvania. Therefore, North Carolina had no jurisdiction under G.S. 55-145(a)(4).

Unlike *Hunt & Sons* and *Marshville Rendering Corp., Dillon v. Numismatic Funding Corp., supra,* does allege a cause of action for breach of contract. This contract between New York and South Carolina residents was both made and breached in South Carolina. Had it been performed, performance would have occurred in New York. Because the contract was neither made, nor to be performed, here in North Carolina, this state had no jurisdiction under G.S. 55-145 (a) (1). Moreover, the cause of action did not arise out of business solicited by the parties in North Carolina, and thus G.S. 55-145 (a) (2) could not apply. Therefore, the broad assertion in *Dillon* that G.S. 55-145 applies only to a cause of action arising in North Carolina is dictum.

Having decided that G.S. 55-145 (a) (1) gives North Carolina jurisdiction over this cause of action, we still have to determine whether application of this statute to this cause of action meets the due process requirement of the Fourteenth Amendment of the Federal Constitution. We hold that it does. The "minimal contacts" requirement of *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), says that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'the traditional notions of fair play and substantial justice.'" *Id.* at 316. Regardless of what other contacts may be present, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Savings has performed just such a purposeful act. It has voluntarily joined in a contract to be performed here in North Carolina. "It is sufficient for the purpose of due process if the suit is based on a contract which has a substantial connection with the forum state." *Byham v. National Cibo House Corp., supra* at 57, 143 S.E. 2d 232. *Accord, Goldman v. Parkland of Dallas, Inc.,* 7 N.C. App. 400, 173 S.E. 2d 15 (1970), *aff'd* 277 N.C. 223, 176 S.E. 2d 784 (1970).

In addition to the contract itself, Savings was personally served with process at its offices in Connecticut. All of the plaintiffs reside in North Carolina, and they performed acts here which, judging from the parties' affidavits, will be material

to this suit. The motel is in North Carolina, and again judging from the affidavits, facts about its construction and condition will be at issue. Because of these facts, it is reasonable, convenient and fair to require Savings to defend this lawsuit in North Carolina. Due process is satisfied. *Byham v. National Cibo House Corp., supra.*

The order of the court below is

Affirmed.

Judges MORRIS and HEDRICK concur.